## EX REL. MORTON v. HOWARD

### No. 2749

August 4, 1926.                                        248 P. 44.

1. CONSTITUTIONAL LAW.
   In absence of provision that filing of referendum petition shall suspend operation of law, court cannot read such provision into constitution.

2. STATUTES.
   Act approved Feb. 18, 1925 (Stats. 1925, c. 16), which was in full force and effect on July 1 following, under Stats. 1925, c. 2, and consolidated offices of sheriff and assessor in Churchill County, *held* not suspended by filing of petition for referendum, and county clerk pending referendum vote could not file declaration of candidacy for assessor, which was separate office under Stats. 1917, c. 113, in view of Stats. 1915, c. 137, and pages 592–594.

See (1) 12 C. J. sec. 387, p. 883, n. 98; (2) 36 Cyc. p. 942, n. 24.

ORIGINAL PROCEEDING in mandamus by the State, on the relation of H. A. Morton, against Charles E. Howard, as county clerk of the county of Churchill. **Alternative writ dismissed, and peremptory writ denied.**

*G. J. Kenny,* for Petitioner:

This question has not been presented to this court before, but in other states the filing of petition for referendum vote on act suspends operation pending vote thereon. If act of 1925 is thus suspended, act of 1917 is reinstated, and under it, petitioner has right to file his declaration of candidacy. State ex rel. Carson v. Kozer, 217 P. 202; State ex rel. Drain v. Becker, 240

S. W. 229; Condemnation of Property for Park, 263 P. 97; Fresno Co. v. Brix Estate Co., 226 P. 77.

*E. E. Winters*, District Attorney, for Respondent:

In all states from which petitioner's authorities are cited, there is provision that on filing referendum petition operation of act is suspended. This is not so in Nevada. Act is operative here unless defeated by referendum. Constitution of Nevada, art. 19, secs. 1, 2, 3.

## OPINION

By the Court, DUCKER, J.:

The petition on which an alternative writ of mandamus issued out of this court shows that on May 8, 1926, there was filed in respondent's office a petition demanding a referendum vote by the qualified electors of said county at the next general election on the question of approving or disapproving of that certain act of the legislature entitled, "An act concerning certain county offices and officers in the county of Churchill, State of Nevada, * * * and other matters properly relating thereto," approved February 18, 1925 (Stats. 1925, p. 21); that said referendum petition was in due form, duly signed by over 10 per centum of the qualified voters of said county, and verified as required by law; that on July 17, 1926, the petitioner herein presented in due form his declaration of candidacy as the Republican candidate for the office of assessor of said county for the full term beginning in the month of January, 1927, to respondent at his office in said county for filing by respondent as county clerk aforesaid, and tendered him the nomination fee as required by law; that then and there respondent refused, and ever since has refused, to accept for filing said declaration of candidacy, or to accept said nomination fee, and has stated that he will decline to accept for filing in his said office any declaration of candidacy for the individual office of assessor, because said act of the legislature provided for the consolidation of the office of assessor with that of the office

of sheriff and ex officio license collector of said county, and that the office of assessor by said act of the legislature is now merely ex officio with that of the office of sheriff and ex officio license collector.

It is averred that the refusal of respondent to file said declaration of candidacy is without warrant or authority of law, and, if persisted in, will deprive petitioner of his right and privilege of having his name submitted to the qualified electors of said county, as the Republican candidate for the office of assessor thereof, in violation of the provisions under the referendum and the provisions of an act of the legislature entitled, "An act segregating certain county offices in the county of Churchill, and fixing the salaries of and imposing certain duties on certain officers in said county," approved March 15, 1917. Stats. 1917, c. 113.

Petitioner contends that the effect of the filing of the petition demanding a referendum vote on the act of 1925 was to suspend the operation of the act pending a vote on the question of its approval or disapproval by the qualified electors of the county at the next general election, and entitled him to file his declaration of candidacy for the office of assessor under the provisions of the act of 1917. By the act of 1917 the offices of sheriff and assessor of Churchill County were segregated, and made and constituted separate offices. Stats. 1917, pp. 202, 203.

By the act of 1925 it was provided in section 1 thereof that from and after the first Monday in January, 1927, the offices of sheriff and assessor of Churchill County, Nevada, shall be consolidated and the sheriff shall be ex officio assessor of said county. Section 4 of said last-mentioned act provides as follows:

"All acts and parts of acts in conflict with this act are hereby repealed."

By section 1 of an act of the legislature of 1925 it is provided:

"Every law and joint resolution hereafter passed by the legislature of the State of Nevada shall take effect and be in force on July first following its passage, unless

such law or joint resolution shall specifically prescribe a different effective date." Stats. 1925, p. 2.

Consequently the act of 1925 consolidating the offices of sheriff and assessor of Churchill County, and making the sheriff ex officio assessor, and repealing the act of 1917, is in full force and effect, unless suspended in its operation by the filing of the petition for a referendum as contended for by petitioner.

The contention cannot be maintained. The part of the initiative and referendum amendment to the constitution pertinent to the inquiry reads as follows:

"Whenever ten per centum or more of the voters of this state, as shown by the number of votes cast at the last preceding general election, shall express their wish that any law or resolution made by the legislature be submitted to a vote of the people, the officers charged with the duty of announcing and proclaiming elections, and of certifying nominations, or questions to be voted on, shall submit the question of the approval or disapproval of said law or resolution to be voted on at the next ensuing election wherein a state or congressional officer is to be voted for, or wherein any question may be voted on by the electors of the entire state."

"When a majority of the electors voting at a state election shall by their votes signify approval of a law or resolution, such law or resolution shall stand as the law of the state, and shall not be overruled, annulled, set aside, suspended, or in any way made inoperative except by the direct vote of the people. When such majority shall so signify disapproval the law or resolution so disapproved shall be void and of no effect."

" * * * The second power reserved by the people is the referendum, which shall be exercised in the manner provided in sections one and two of this article. The initiative and referendum powers in this article provided for are further reserved to the qualified electors of each county and municipality as to all local, special and municipal legislation of every character in

or for said respective counties or municipalities. The legislature may provide by law for the manner of exercising the initiative and referendum powers as to county and municipal legislation. * * * " Stats. 1915, pp. 592–594.

It will be seen from the above that there is not to be found in the referendum provision of the constitution anything expressly giving to the filing of a referendum petition the effect of suspending the operation of the law aimed at until a vote can be had upon the question, nor can such intention be implied therefrom. Pursuant to constitutional authority, the legislature enacted the law invoked by the people of Churchill County providing for the manner of exercising the referendum powers as to county legislation. Stats. 1915, pp. 157–159. No provision is made in the law for suspending the operation of a statute to which a referendum petition should be filed which indicates that the legislature did not consider the constitution as conferring the power.

The section of the law providing for a special election upon petition to the county commissioners signed by 40 per centum of the qualified electors of the county is an affirmative indication that the legislature did not intend to give to the filing of a referendum petition the effect of suspending the operation of the statute referred.

Why provide for a special election if it was intended that a petition signed by ten per centum of the electors would suspend the operation of the law until voted upon at the general election? We are referred to the case of State ex rel. Drain v. Becker (Mo. Sup.) 240 S. W. 229, wherein it was said that the filing of a referendum petition suspended the operation of the law pending a vote upon the question by the people. A glance at the initiative and referendum provision of the Missouri constitution reveals the reason. By the provisions of that constitution no law except the general appropriation act shall take effect or go into force until 90 days after the adjournment of the session at which it was

enacted, unless in case of an emergency the general assembly shall by a two-thirds vote of all the members elected to each house otherwise direct. Referendum petitions must be filed not more than 90 days after the final adjournment of the session of the legislative assembly which passed the bill on which the referendum is demanded. Any measure shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise.

The Washington, Oregon, California, and Montana constitutions also contain specific provisions for withholding operation of a law referred to the people until approved by a majority vote. It is unnecessary, therefore, to further refer to decisions cited by petitioner touching the referendum in these states.

1. Petitioner contends that the referendum provision of the constitution should be construed liberally in favor of the reservation. But there is no room for construction on the question here involved. The people make their own constitution, and, when they have not seen fit to provide that the filing of a referendum petition shall suspend the operation of a law, we are not authorized to read such a provision into the constitution.

2. A law passed by the legislature, and in full force and effect referred to the people, is not suspended or annulled until a majority of the electors have voted against it. As the law of 1925 providing for the consolidation of the offices of sheriff and assessor in Churchill County and making the sheriff ex officio assessor is in full force and effect, the clerk of that county is not authorized to file petitioner's declaration of candidacy for the office of assessor.

The alternative writ of mandamus heretofore issued should be dismissed, and the peremptory writ prayed for denied.

It is so ordered.

COLEMAN, C. J.: I concur.

SANDERS, J.: I concur in the order.