Benjamin O. WALTERS and Frank Mullen, Petitioners,

v.

Ronald CEASE, Director, Local Affairs Agency, Hugh J. Wade, Secretary of State, and the State of Alaska, Respondents.

No. 447.

Supreme Court of Alaska.

Jan. 15, 1964.

Ted Stevens, Anchorage, for petitioners.

George N. Hayes, Atty. Gen., John K. Brubaker, Asst. Atty. Gen., Juneau, for respondents.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The petitioners commenced this action on September 4, 1963, in the superior court for a declaratory judgment that chapter 52, SLA 1963, known as the Mandatory Borough Act and hereinafter referred to as the act, is unconstitutional. At the same time they asked the court to enjoin the respondents from taking any action under the authority which might have been conferred upon them by the act. About one month later the petitioners moved for a preliminary injunction designed to enjoin the respondents from proceeding to organize boroughs [1] under the act until the qualified voters of the state should have had an opportunity to approve or reject the act at a referendum election to be held in August, 1964.

After oral argument and the submission of written memoranda by the parties, the superior court held that the petitioners were not entitled to a preliminary injunction. In so ruling the court refused to accept the petitioners' claim that the referral of a legislative act to the voters under the referendum provisions of the state constitution postpones the effective date of the act pending the outcome of the referendum election.

As the order of the court denying the motion is not an appealable order but one which we may consider on petition for review,[2] and as the question of whether the exercise by the people of the referendum provisions of the constitution suspends the effective date of an act of the legislature is of sufficient substance and importance to justify deviation in this case from the normal appellate procedure and to require our immediate attention,[3] we hereby grant review.

Both parties concede that the referendum provisions of the Alaska Constitution are unique in that they do not specifically state whether the referral of an act of the legislature does or does not suspend the effective date of the act. The pertinent sections of article XI of the constitution, entitled "Initiative, Referendum, and Recall," provide as follows:

"Section 1. * * * The people may propose and enact laws by the initiative, and approve or reject acts of the legislature by the referendum.

"Section 2. * * * An initiative or referendum is proposed by an application * * * signed by not less than one hundred qualified voters as sponsors, and shall be filed with the secretary of state. If he finds it in proper form he shall so certify. * * *

"Section 3. * * * After certification of the application, a petition containing a summary of the subject matter shall be prepared by the secretary of state for circulation by the sponsors. If signed by qualified voters, equal in number to ten per cent of those who voted in the preceding general election and resident in at least two-thirds of the election districts of the State, it may be filed with the secretary of state.

---

1. The borough in Alaska is a political subdivision of the state for governmental purposes and corresponds generally to the county in other states. Under the Alaska Constitution all local government powers are vested in boroughs and cities. Boroughs, organized or unorganized, are to be established according to standards of population, geography, economy, transportation and other factors, provided by law. Each borough is to embrace an area and population with common interests to the maximum degree possible. Alaska Const., art. X, §§ 2, 3.

2. See Supreme Ct. R. 23(a).

3. See Supreme Ct. R. 24(1).

"Section 4. * * * [Relates only to the initiative.]

"Section 5. * * * A referendum petition may be filed only within ninety days after adjournment of the legislative session at which the act was passed. The secretary of state shall prepare a ballot title and proposition summarizing the act and shall place them on the ballot for the first statewide election held more than one hundred eighty days after adjournment of that session.

"Section 6. * * * If a majority of the votes cast on the proposition favor the rejection of an act referred, it is rejected. The secretary of state shall certify the election returns. An initiated law becomes effective ninety days after certification * * *. An act rejected by referendum is void thirty days after certification. Additional procedures for the initiative and referendum may be prescribed by law.

"Section 7. * * * The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules, or enact local or special legislation. The referendum shall not be applied to dedications of revenue, to appropriations, to local or special legislation, or to laws necessary for the immediate preservation of the public peace, health, or safety."

The petitioners take the position that the initiative and referendum, reserved to the people by the constitution, are a part of the original legislative process. Therefore, they claim, since Alaska has no constitutional provision to the contrary, article XI must be interpreted to mean that the filing of a referendum petition suspends the operation of the act referred. This, they say, was the intent and understanding of the delegates to the constitutional convention and is ex-

pressed in the report of the Committee on Direct Legislation, Amendment and Revision when it submitted to the convention its Proposal No. 3 as an article for inclusion in the constitution, relating to the initiative, referendum and recall. We have examined the files and recorded proceedings of the constitutional convention and find therein that on December 16, 1955, Delegate Taylor, commenting from the floor of the convention on Proposal No. 3, expressed his opinion that the filing of a referendum petition would suspend the act referred unless it contained an emergency clause.[4] About one month later, Delegate Sundborg, speaking at the convention as chairman of the Committee on Styling and Drafting on the restyled Proposal No. 3, stated:

"In the case of the referendum, *it was our feeling that if some law has been found not desirable by the public they should not have to live under it for a whole 90 days after they have rejected it but 30 days would be enough.* We felt that time should be provided after certification because it might be a very close election and it would be decided by only a very few votes. The people of the state would not know right up to the very moment the secretary of state certified, whether the matter had been approved or rejected and *we felt that some time should be allowed so that all citizens of the state would have some warning of a law that was then on the books becoming void * * *"[5] [Emphasis supplied.]

█ The Committee on Styling and Drafting obviously felt that an act referred is a law in operation until thirty days after certification. This interpretation of the committee, which is diametrically opposed to the view expressed earlier by Delegate Taylor, stands on more solid footing than an opinion voiced by any individual mem-

4. Alaska Constitutional Convention, Transcript of Proceedings, December 13–16, 1955, pp. 934–36. (Alaska Legislative Council—preliminary draft)

5. Alaska Constitutional Convention Minutes, January 24, 1956, pp. 25–26.

ber of the convention and may be resorted to by this court in determining the intent of the constitutional convention.[6]

█ We turn next to the report of the Committee on Direct Legislation, Amendment and Revision dated December 9, 1955, and submitted to the convention along with Proposal No. 3. This report stated in part that the referendum "permits the people to require that laws passed by the Legislature be referred to a vote of the people before taking effect."[7] While such a statement might have been a valuable aid for ascertaining the intention of the convention with respect to the constitutional provision then under consideration,[8] it loses any value it may have had because Proposal No. 3, to which the committee report of December 9 had been addressed, was later amended so as to materially change its meaning.[9]

To clarify, on December 9, the Article on Direct Legislation (Proposal No. 3) provided in section 2 that

"The people reserve the power to require, by petition, that laws enacted by the legislature be submitted to the voters for approval or rejection."[10]

It was this section, according to the committee report, which prevented a law passed by the legislature from taking effect before it had been approved by the people on a

referendum. The section was later combined with another section which read

"Section 1. The people reserve the power by petition to propose laws and to enact or reject such laws at the polls".[11]

This combination resulted in section 1 of article XI of the constitution which now provides:

"The people may propose and enact laws by the initiative, and approve or reject acts of the legislature by the referendum."[12]

It is also significant that Proposal No. 3 on December 9 provided in section 4 thereof that "the question on referendum shall be submitted to the voters by ballot title *not later than 120 days after the filing of a petition against the measure.*"[13] [Emphasis supplied.] This provision was later changed to read:

"Questions on referendum shall also be submitted to the voters by ballot title *at the first statewide election occuring [sic] more than one hundred twenty (120) days after adjournment of the legislature which passed the law being referred.*"[14] [Emphasis supplied.]

Further, we note that the draft of Proposal No. 3, dated December 9, contained no such provision as we find in article XI,

6. Starr v. Hagglund, 374 P.2d 316, 319 (Alaska 1962).

7. Proposal No. 3 and the "Commentary" thereon by the Committee on Direct Legislation, Amendment and Revision, as well as all minutes and other proceedings of the constitutional convention are contained in the Records of the Alaska Constitutional Convention, now in the custody of the Secretary of State, Juneau, Alaska.

8. See Starr v. Hagglund, 374 P.2d 316, 319 (Alaska 1962); Annot., 70 A.L.R. 5, 39–41 (1931).

9. See State v. Peters, 112 Ohio St. 249, 147 N.E. 81, 83 (1924).

10. Committee Proposal No. 3, introduced by Committee on Direct Legislation and submitted to Convention with Committee's "Commentary" on the Article of

Initiative, Referendum, and Recall, December 9, 1955.

11. Id.

12. Report of the Committee on Style and Drafting, Constitutional Convention Committee Proposal/3, Enrolled/Style and Drafting, January 23, 1956. See also Alaska Const., art. XI, § 1.

13. Supra, n. 10.

14. Committee Proposal No. 3 of December 19, 1955, and of January 6 and January 9, 1956. Some additional changes appear in the Committee Proposal No. 3, dated January 23, 1956, one of them providing that any question referred should be placed on the ballot for the first statewide election held more than 180 days after the adjournment of the session of the legislature which passed the act being referred.

section 6 that an act rejected by referendum is *void thirty days after certification.* That provision did not appear except in section 6 of the final draft of Proposal No. 3 which carries the date of January 23, 1956.

Finally, the respondents have called to our attention a document in the files and records of the constitutional convention entitled "Delegate Proposal No. 29, Initiative, Referendum and Recall—Amendment & Revision" dated December 1, 1955, and introduced by Delegate Metcalf. In the second paragraph of section 7 of that proposal it is provided that "any measure submitted to the vote of the people either by Initiative or Referendum shall take effect when approved by a majority of the votes cast thereon." Neither the two committees who worked on Proposal No. 3 nor the convention saw fit to include such a provision in article XI of our constitution.

Because of the foregoing substantial changes made in the wording of Proposal No. 3 after December 9, and in view of the failure of the Committee on Direct Legislation to specifically provide in article XI for the suspension of referred legislation pending a referendum election, along the lines proposed by Delegate Metcalf, we cannot say that the statement contained in the report of December 9, accompanying Proposal No. 3, is indicative of the considered intent of the constitutional convention that a referred act of the legislature should not take effect until after a referendum election thereon. The task then becomes ours to determine the meaning of article XI with respect to the problem at

hand by construing the article as it is, taking into consideration all of its provisions and any other parts of the constitution in *pari materia.*[15]

We give attention first to sections 17 and 18 of article II of the constitution, which we deem essential to a true understanding of the referendum provisions of article XI. Those sections provide as follows:

"Section 17. * * * A bill becomes law if, while the legislature is in session, the governor neither signs nor vetoes it within fifteen days, Sundays excepted, after its delivery to him. * * *"

"Section 18. * * * Laws passed by the legislature become effective ninety days after enactment. The legislature may, by concurrence of two-thirds of the membership of each house, provide for another effective date."[16]

These two sections, we believe, give meaning to the words contained in section 6 of article XI that "an act rejected by referendum is void thirty days after certification."[17] If the act is not void until thirty days after certification that it was properly rejected at the poll, then we must assume that it was intended to be in full force and effect until the contrary has been established by the completed referendum process. This follows reasonably from the fact that the word "void" is defined as "ineffectual, having no legal force or binding effect,"[18] for which the antithetical terms are "effectual, having legal force and binding effect."

15. Thomas v. State ex rel. Cobb, 58 So.2d 173, 174, 34 A.L.R.2d 140 (Fla.1952).

16. The respondents point out in their brief that under the provisions of sections 17 and 18 of article II acts of the legislature have the potentiality of becoming law and acquiring operative effect on a variety of dates before or after adjournment of the legislative session at which they were enacted. An act of the legislature with an immediate effective date, they rightly say, could conceivably be signed into law early in a legislative session and would be

in actual operative effect for several months prior to the commencement of the ninety-day period in which a petition for referendum may be filed under article XI, section 5.

17. The legislature in 1960 adopted almost verbatim the language of section 6 of article XI of the constitution for establishing the time when an act rejected by referendum shall become void. SLA 1960, ch. 83, § 9.50 [AS 15.45.440].

18. Black, Law Dictionary 1745 (4th ed. 1951).

In the light of the clear wording of sections 17 and 18 of article II and section 6 of article XI set forth above, we believe that the framers of the constitution and the people who adopted it intended that the effectiveness of an act passed by the legislature should not be suspended during the period between its effective date and its rejection by the referendum. If they had intended otherwise they would have expressly so provided in the constitution.[19]

We conclude that the natural import of the provisions of articles II and XI of the constitution, which we have discussed in this opinion, is that the filing of a referendum petition does not suspend the effect or operation of the act referred. Therefore, if an act is rejected by the people in a referendum election it, nevertheless, remains in full force and effect until thirty days after certification of the election returns by the secretary of state.

The order of the superior court denying the petitioners a preliminary injunction is sustained and the case is remanded to that court for further proceedings in conformity with this opinion.

19. Of the twenty other states which have provided in their constitutions for the use of the referendum by the electorate to reject laws passed by the legislature, Nevada seems to be the only one which has a provision declaring that, when the majority of the electors shall by their vote at a state election signify disapproval of the law referred, the law so referred shall be void and of no effect. After pointing out that there was nothing to be found in the referendum provision of the constitution expressly giving to the filing of a referendum petition the effect of suspending the operation of the law aimed at until a vote could be had upon the question, the Nevada Supreme Court held: "The people make their own Constitution, and, when they have not seen fit to provide that the filing of a referendum petition shall suspend the operation of a law, we are not authorized to read such a provision into the Constitution." State ex rel. Morton v. Howard, 49 Nev. 405, 248 P. 44, 45–46 (1926).