STATE of Alaska ex rel. Jay S. HAMMOND, Appellant,

v.

B. B. ALLEN, Commissioner of Administration, Lowell Thomas, Jr., Nels A. Anderson, Jr., Helen D. Beirne, M. F. Beirne, Bob Bradley, Mike Bradner, Fred E. Brown, Thelma Buchholdt, Samuel R. Cotten, Steve Cowper, Larry T. Davis, Jim Duncan, Richard I. Eliason, Oral Freeman, Terry Gardiner, Clark Gruening, Phillip Guy, Glenn Hackney, E. J. Hershberger, James H. Huntington, Brenda T. Itta, Ramona M. Kelley, Joseph H. McKinnon, Hugh Malone, Mike Miller, Edward F. Naughton, Al Ose, Alvin Osterback, Kathryn Ostrosky, William K. Parker, Charles H. Parr, Leo Rhode, Lisa Rudd, Theodore G. Smith, Keith W. Specking, Susan Sullivan, Leslie E. Swanson, Richard K. Urion, Tim Wallis, W. E. Bradley, John Butrovich, Genie Chance, Mike Colletta, Chancy Croft, Frank Ferguson, George H. Hohman, John Huber, Jalmar M. Kerttula, H. D. Meland, Terry Miller, Joseph L. Orsini, Kay Poland, John L. Rader, Bill Ray, Patrick Rodey, John Sackett, Clem V. Tillion, Edward C. Willis, and Robert H. Ziegler, Sr., Appellees.

No. 5056.

Supreme Court of Alaska.

Jan. 30, 1981.

Rodger W. Pegues, Asst. Atty. Gen., Avrum M. Gross, Atty. Gen., Juneau, for appellant.

James B. Bradley and Pamela L. Finley, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

RABINOWITZ, Chief Justice.

In this suit for declaratory and injunctive relief, appellant State of Alaska sought a judicial determination of the effects of a referendum repeal of Chapter 205, Session Laws of Alaska 1975.[1] That enactment, in addition to providing for substantial pay raises for members of the legislature and the judiciary, created a retirement system known during its short life as Elected Public Officers' Retirement System (hereinafter EPORS). Ch. 205, §§ 1–4, 8, SLA 1975. The suit was opposed by B. B. Allen, Commissioner of Administration at the time the action was filed, and sixty-one elected officials, all of whom contributed to EPORS but had not retired at the time the repeal became effective.

Prior to January 1, 1976, all elected public officials of the state were authorized to participate on a voluntary basis in a retirement plan known as the Public Employees' Retirement System (hereinafter PERS). AS 39.35.125. On January 1, 1976, the pertinent provisions of Chapter 205 became effective, under which all legislators, the governor, and the lieutenant governor were excluded from PERS and required to participate in EPORS. The new mandatory plan featured higher contributions by participants as well as more generous benefits. On August 24, 1976, the entire act was repealed in a referendum election by a substantial majority of Alaska's voters. All legislators, the governor, and the lieutenant governor participated in EPORS between January 1, 1976, and October 14, 1976, the date the repeal became effective.

On the effective date of the repeal, two EPORS participants had retired and were qualified in every way to receive benefits under that system. Their continuing eligibility is not in issue. The essential dispute before the superior court was as to whether officials who were participating in EPORS at the time of its repeal, but who were not then entitled to benefits, will be entitled to benefits under that system upon retirement. Appellant argued that the repeal was effective as to such persons and that it revived their right to voluntary participation in PERS. Appellees took the position that the repeal was ineffective as to all persons who were members of EPORS before October 14, 1976, whether or not they were then entitled to or receiving benefits.

Summary judgment was entered in favor of appellees. Although appellant agrees that no genuine issues of material fact are in dispute and that summary judgment in this case is proper, it urges that the superior court erred in granting appellees' motion for summary judgment rather than its own. We affirm the superior court's judgment.

We have previously analyzed Alaska's Constitutional provisions concerning the referendum process in some detail. In *Walters v. Cease*, 388 P.2d 263, 268 (Alaska 1964), we observed:

In the light of the clear wording of sections 17 and 18 of article II [which specify the time at which legislative enactments become effective] and section 6 of article XI [which details the effect of

---

1. As described by the referendum ballot:

The referred act provided for an increase in compensation for judges, legislators, commissioners, and members of certain commissions and for improved retirement benefits for all members of the retirement systems. It required judges appointed after the effective date to contribute to their retirement program. It increased legislative per diem. It decreased the period of service required for retirement benefits to vest in the governor, lieutenant governor, and members of the legislature. It tied salaries of high ranking officials by percentages to the general salary schedule for state employees.

repeal by referendum] ... we believe that the framers of the constitution and the people who adopted it intended that the effectiveness of an act passed by the legislature should not be suspended during the period between its effective date and its rejection by the referendum. If they had intended otherwise they would have expressly so provided in the constitution.

We conclude that the natural import of the provisions of articles II and XI of the constitution, which we have discussed in this opinion, is that the filing of a referendum petition does not suspend the effect of operation of the act referred. Therefore, if an act is rejected by the people in a referendum election it, nevertheless, remains in full force and effect until thirty days after certification of the election returns by the secretary of state. [footnote omitted]

*Walters* clearly establishes that the legislation in question in this case, whatever its import, was in full force from January 1, 1976, until October 14, 1976.[2]

The primary dispute in this appeal involves the interpretation of article XII, section 7, of the Alaska Constitution. That section provides that:

Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship. Accrued benefits of these systems shall not be diminished or impaired.

Appellant's contention is that EPORS is not an "employee retirement system" within the meaning of article XII, section 7, and is therefore not within the scope of that section's protection. The State does not question the application of this constitutional provision to participation by elected public officials in PERS. It simply seeks to distinguish the two programs on several grounds, primarily based upon what the State perceives to be the different purposes of the two systems.

We agree with the State's general characterization of a major purpose underlying public employees' retirement systems: "to induce persons to enter and continue in public service." *See Phillipson v. Board of Administration, Public Employees' Retirement System*, 3 Cal.3d 32, 89 Cal.Rptr. 61, 473 P.2d 765, 776 (1970), *overruled on other grounds* in *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561, 569 (1976); *Geller v. Department of Treasury, Division of Pensions and Annuity Fund*, 53 N.J. 591, 252 A.2d 393, 396 (1969). We cannot, however, agree with appellant's first purported distinction—that this purpose cannot underlie EPORS because it would necessarily impute to the legislators the motive of "political suicide." A genuine purpose to attract qualified persons to run for elective office is more rationally imputed to the legislature, and this purpose is indistinguishable from that of attracting qualified persons to non-elective public employment. The State insists that "it is quite beyond human experience that persons who hold elective office would essay to induce others to run against them." We cannot adopt such a cynical view, and are of the opinion that elected officers may quite reasonably endeavor to attract highly qualified persons to join their ranks.

Second, the State seeks to distinguish the two systems on the ground that elected public officials do not contemplate full-time career employment in that capacity, where-

2. We note that some state constitutions contain explicit provisions suspending the operation of referred legislation pending the outcome of a referendum election. *See, e. g.*, Mich.Const. Art. II, § 9 ("No law as to which the power of referendum properly has been invoked shall be effective thereafter unless approved by a majority of the electors voting thereon at the next general election."); Wash.Const. Art. II, § 1 ("(c) No act, law, or bill subject to referendum shall take effect until ninety days after the adjournment of the session at which it was enacted .... (d) ... Any measure ... referred to the people as herein provided shall take effect and become the law if it is approved by a majority of the votes case thereon ....). As we stated in *Walters v. Cease*, 388 P.2d 263, 268 (Alaska 1964), if the framers of the Alaska Constitution had intended that result they would have expressly so provided; if such a result were now desired, amendment of the constitution would be the appropriate way to achieve it.

as employees hired by the State do intend to pursue careers in public service. We disagree with the contention that such a difference demonstrates that EPORS is not an "employee retirement system." On the contrary, this distinction can be seen to explain the perceived necessity for a system other than PERS to meet the special needs of public officials who cannot rely on full-time careers in elective offices. Establishment of a separate retirement system to meet the special needs of teachers,[3] for example, is not questioned, and there would appear to be no doubt as to the inclusion of participation in that system within the protection of section 7 of article XII.

Finally, the State argues that the basis of the constitution's protective language was the need "to protect *employee* rights from the *lawmakers*" (appellant's emphasis). Even assuming, arguendo, the accuracy of that contention, we do not agree that it gives rise to a crucial distinction. The financial future of elected officials, whether or not those officials participated in or supported the enactment of their own retirement system, is entitled to the same protection as is that of non-elected public employees. We simply do not share appellant's view that the retirement income of a person elected to serve the public deserves less protection against modification by a legislative majority than does the retirement income of a person hired or appointed to serve the public.

Further support for our interpretation is provided by the fact that AS 39.35.125 clearly contemplates an employer-employee relationship between elected officials and the State in the context of a retirement system. That statute, in making PERS available to legislators, the governor, and the lieutenant governor, reads, in pertinent part:

(a) An elected official ... may be included in [PERS] if ... (1) he directs his employer in writing to make the necessary deduction from his salary and to pay into the system the contributions required by and for an employee under this chapter ....

AS 39.35.125(a)(1). As has been pointed out, appellant concedes that participation by elected officials in PERS is protected. We are not persuaded that a change in the provisions of a retirement system like the change involved here should be considered to alter the character of members' participation in such a system.

■ In short, we are unable to perceive any valid basis upon which to distinguish the rights of elected officials in EPORS from their rights in PERS in the context of article XII, section 7, of the Alaska Constitution.[4] As appellant recognizes, the meaning of the word "employee" as opposed to "officer" is dependent upon the context in which the word is used. *Larson v. State,* 564 P.2d 365, 369 (Alaska 1977). We hold that the protection afforded "employee retirement systems," Alaska Const. art. XII, § 7, covers participation in those systems by all persons holding salaried positions with the state.

Because appellant concedes that the contractual rights of members of public employee retirement systems are "vested," *see Yeazell v. Copins,* 98 Ariz. 109, 402 P.2d 541, 545 (1965) (en banc); *Betts v. Board of Administration of Public Employees' Retirement System,* 21 Cal.3d 859, 148 Cal. Rptr. 158, 582 P.2d 614, 617 (1978); *Hanson v. City of Idaho Falls,* 92 Idaho 512, 446 P.2d 634, 636 (1968), we need not consider that question here. Recognizing, however, that "[t]he terms 'vested right' and 'expectancy' are troublesome terms that have often been used to explain a decision without explaining it,"[5] 3A A. Corbin *Corbin on*

---

3. *See* AS 14.25.

4. Restrictions upon the compensation and benefits awarded by the legislature to its members that may arise from sources other than section ·7 of article XII are not before us on this appeal. We therefore express no opinion as to any such possible restrictions.

5. Corbin elaborates on this observation as follows:

The terms 'vested right' and 'expectancy' are troublesome terms that have often been used to explain a decision without explaining

*Contracts* § 626, at 10 (rev. ed. 1960), we find it necessary to clarify one further point.

Appellant argues that even granting the existence of a valid contract between participants in EPORS and the State of Alaska, the duty of performance by the State was subject to a condition subsequent. That condition, according to appellant, was the repeal of ch. 205, SLA 1975. In support of this position, appellant points to the fact that a referendum petition was duly filed during the first week of September 1975 and that, consequently, potential participants in EPORS were on notice before the effective date of the act that it was in danger of being repealed.

■ The *Restatement* defines "condition subsequent" as a condition which, if it occurs, "will extinguish a duty to make compensation for breach of contract after the breach has occurred." *Restatement of Contracts* § 250 (1932). *See also* 3A A. Corbin, *Corbin on Contracts* § 628, at 17 (rev. ed. 1960). If the repeal of ch. 205, SLA 1975, operates as such a condition in this case, it would justify the State in breaching the contract we have determined is in existence and extinguish any duties the State would have otherwise had to make payments under that act. Because conditions subsequent have the effect of causing a forfeiture of contract rights that are otherwise due and enforceable, they are not favored by the law. *United States v. Haynes School District No. 8*, 102 F.Supp. 843, 851 (E.D.Ark.1951); *Kindler v. Anderson*, 433

P.2d 268, 270 (Wyo.1967). Generally speaking, "the intent to create a condition subsequent must appear expressly or by clear implication" if such a condition is to be found. *Lowe v. Copeland*, 125 Cal.App. 315, 13 P.2d 522, 525 (1932). *See also United States v. Haynes School District No. 8*, 102 F.Supp. 843, 851 (E.D.Ark.1951); *Langford v. Eckert*, 9 Cal.App.3d 439, 88 Cal.Rptr. 429, 432 (1970).

■ In the present case there is no express condition subsequent contained in the contract between appellees and the State of Alaska. Appellant's position, then, is that such a condition exists "by clear implication." We note first that in Alaska the referendum operates as a repeal, *Area Dispatch Inc. v. City of Anchorage*, 544 P.2d 1024 (Alaska 1976), and that for that reason, appellant's argument seems to run directly counter to the provisions of AS 01.-10.100(a).[6] Under that statute, "[t]he repeal ... of any law does not release or extinguish any ... liability incurred or right accruing or accrued under such law." Further, we share appellees' apprehension that finding a condition subsequent to be implicit in the contract under consideration would undermine article XII, Section 7. We believe that if the possibility of repeal of a law could function as an implicit condition subsequent to a contract formed under that law, the protection of contract rights afforded by article XII, section 7, would be seriously eroded. Even assuming the extreme likelihood of the subsequent repeal of a legislative enactment, as appellant insists

it. The ideas behind them are so variable and uncertain as to make their use both deceptive and confusing. It is clear that the fact that rights are future and conditional does not prevent their recognition and protection; they are within the protection of the Constitutional provision against impairment of obligation by a State. A contract creating such rights is legally effective according to its terms; if the payment of money is promised therein, to either the promisee or a third party beneficiary, the existence of a 'contract right' is not denied merely because the money is payable in the future and only on the happening of an uncertain event or because some one has a power of termination or modification. If a right has to be 'vested' in order

to be recognized and protected, these rights are vested. It is immaterial whether the parties 'expect' or 'hope' that payment will take place.
3A A. Corbin, Corbin on Contracts § 626, at 10–11 (rev. ed. 1960).

**6.** AS 01.10.100(a) reads:

The repeal or amendment of any law does not release or extinguish any penalty, forfeiture, or liability incurred or right accruing or accrued under such law, unless the repealing or amending act so provides expressly. The law shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of the right, penalty, forfeiture, or liability.

that we must in this case, we are of the view that article XII, section 7, and AS 01.10.100(a) preclude the finding of an implicit condition subsequent in the contracts under consideration. Because we regard these provisions as dispositive, we need not address the question of whether, as appellees suggest, Alaska's contract clause [7] also protects the rights in question here.[8]

Given the disfavor with which the law has viewed implied conditions subsequent, and the constitutional and statutory obstacles to the finding of such a condition in this case, we are unable to accept appellant's argument. For reasons already discussed, we are unwilling to distinguish elected officials from other persons holding salaried positions with the state in the context of participation in retirement systems, and therefore need not consider appellant's claim that elected officials are somehow more vulnerable to implied conditions subsequent than are other parties to contracts with the State of Alaska. We hold that the rights accrued by appellees under EPORS were not subject to any implied condition subsequent of repeal by the electorate and that those rights remain fully enforceable.

All of appellant's remaining arguments are premised on the assumption that article XII, section 7, of the Alaska Constitution is inapplicable to EPORS. Our holding to the contrary compels the conclusion that EPORS "constitute[s] a contractual relationship" between participants in that program and the State of Alaska, Alaska Const. art. XII, § 7, which must be honored by the state. All elected officials who were

participating in EPORS at the time its repeal became effective will, therefore, be entitled to the benefits provided by that system upon retirement. The decision of the superior court is AFFIRMED.

BOOCHEVER, J., not participating.

---

7. Alaska Const. art. I, § 15, reads:

    *Prohibited State Action.* No bill of attainder or ex post facto law shall be passed. No law impairing the obligation of contracts, and no law making any irrevocable grant of special privileges or immunities shall be passed. No conviction shall work corruption of blood or forfeiture of estate.

8. There is likewise no need to reach the contention that yet another constitutional provision applies to the rights of the governor and lieutenant governor in EPORS. Alaska Const. art. III, § 15, reads:

    *Compensation.* The compensation of the governor and the lieutenant governor shall be

prescribed by law and shall not be diminished during their term of office, unless by general law applying to all salaried officers of the State.

    Appellees' argument is that since retirement benefits are "compensation" within the meaning of that provision, *see Carper v. Stiftel*, 384 A.2d 2, 6–7 (Del.1977); *Miles v. Tennessee Consolidated Retirement System*, 548 S.W.2d 299, 306 (Tenn.1976), art. III, § 15, would assure the rights of the governor and lieutenant governor to participation in EPORS even if members of the legislature were not entitled to participate in that system.