Merritt P. STARR and Clarence J. Bailey,
Appellants,

v.

Paul B. HAGGLUND, Pearse M. Walsh, Peter M. Deveau, Frank Peratrovich, Eben Hopson, Donald Harris, Helen D. Sheahan, Robert E. Ellis, Ed Locken, John J. Conway, Lester Bronson, Peter Jorgensen, Marcus Jensen, Lauris S. Parker, James Nolan, Mrs. Allan L. Petersen, Robert I. Ditman, Jack Werner, Edith Bullock, Robert R. Blodgett, Harold Z. Hansen, Carl W. Heinmiller, Morgan W. Reed, City of Juneau, a municipal corporation, and City of Douglas, Alaska, a municipal corporation, Appellees.

No. 246.

Supreme Court of Alaska.

Aug. 16, 1962.

Rehearing Denied Sept. 11, 1962.

James E. Fisher, Kenai, John R. Connolly, Paul F. Robison and Arthur D. Talbot, Anchorage, for appellants.

R. Boochever, Juneau, Robert J. McNealy, Fairbanks, Harold J. Butcher, Anchorage, Robert H. Ziegler, Ketchikan, for appellees.

Before NESBITT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

A schedule of transitional measures appended to the Alaska constitution provides in section 20 that "The capital of the State of Alaska shall be at Juneau." The appellants, Starr and Bailey, are sponsors of an initiative petition to move the capital from its present location to some place in Western Alaska.[1] At the instance of ap-

---

1. The precise location would be determined by a vote of the people after a special committee had selected not more than three potential capital sites.

pellees, the Secretary of State was enjoined by the superior court from placing the proposition on the ballot for submission to the voters of Alaska. The basis of the court's action was its determination that section 20 could not be amended or revised by means of an initiative. That is the issue presented on this appeal.

The document entitled "The Constitution of the State of Alaska", as published by the Alaska constitutional convention in 1956, contains a preamble, fifteen numbered articles, and three ordinances. The first twelve articles deal, respectively, with a declaration of rights; the legislature; the executive; the judiciary; suffrage and elections; legislative apportionment; health, education, and welfare; natural resources; finance and taxation; local government; initiative, referendum, and recall; and general provisions. Immediately following is article XIII which prescribes the manner in which the constitution may be amended or revised.

The next part of the document is article XIV, entitled "Apportionment Schedule". It divides the state into election districts and prescribes the number of representatives and senators to be elected from each district. Following is article XV, designated as "Schedule of Transitional Measures". It commences with the preamble: "To provide an orderly transition from a territorial to a state form of government,

it is declared and ordained:"; and then contains, among other provisions, section 20 relating to the location of the state capital.

It is with the Schedule of Transitional Measures that we are particularly concerned. If section 20 is a constituent part of the constitution, then it cannot be changed other than by constitutional amendment as provided by article XIII.[2] If it is not, then article XIII has no application, and the location of the capital may be changed by law, enacted either by the legislature or by the people through the initiative.

■ We hold that the method of amending section 20 is not governed by provisions relating to constitutional amendments. The express purpose of the article of which it is a part, as stated in the preamble, was "To provide an orderly transition from a territorial to a state form of government."[3] Section 20 reasonably effected that purpose. The last Territorial legislature adjourned on March 28, 1957. Its next session was scheduled for the fourth Monday in January 1959.[4] But in the meantime the Territory became the State of Alaska. The enabling act was approved by the President on July 7, 1958,[5] and statehood became a reality by virtue of Presidential proclamation made on January 3, 1959.[6] Thus began the transition from a territorial to a state form of government. The newly elected, first governor of the state assumed his of-

2. Alaska Const., art. XIII provides two methods of amending the constitution: (1) by a constitutional convention, followed by a ratification of the proposed amendment by the people, and (2) by a proposal that has obtained a two-thirds vote of each house of the legislature, and is adopted by the people by majority vote at a statewide election. The initiative may be used only to enact laws, and not for the purpose of constitutional amendment. Alaska Const., art. XI and art. XII, § 11.

3. Appellees argue that we cannot consider the preamble, because of the prohibition found in article XII, section 10, that "Titles and subtitles shall not be used in construing this constitution." The answer to that argument is that the pre-

amble, or declaration of purpose, is neither a title nor a subtitle. The title of each article is centered in large, bold-face type. In article XV it reads "SCHEDULE OF TRANSITIONAL MEASURES." Subtitles are also in bold-face type, but of smaller size. They are placed in the margin immediately adjacent to the sections to which they refer. For section 20 of article XV the subtitle is "State Capital".

4. 54 Stat. 111 (1940), 48 U.S.C.A. § 74 (1952), § 4–1–7 ACLA 1949.

5. 72 Stat. 339 (1958), 48 U.S.C.A. preceding section 21.

6. Exec.Proc. No. 3269, 24 Fed.Reg. 81 (1959), 48 U.S.C.A. preceding section 21.

fice on January 3, 1959, replacing the governor of the territory. The first state legislature was to convene on January 26, 1959. Prior to the time that the new legislature could meet and act, it was a reasonable and orderly thing to provide a place for it to convene—a seat of government where the newly created legislative branch could deliberate and act, and where the executive department of the state could carry out its functions. It was a matter of convenience to designate that place as Juneau, since it had been the capital and seat of government of the Territory since 1912.[7] This was where the legislative and executive records of the Territory were maintained. Here were located the headquarters of practically all the departments of the Territory's executive branch of government. The great majority of territorial officers, who were to continue to perform their duties until superseded by officers of the state,[8] maintained their offices at Juneau. Therefore, it made sense and had a real relationship to orderliness in the transitional period, for the convention delegates to provide a seat of government for the new state and to designate the place as Juneau.

A transition is a passage or change from one status to another.[9] Once the change has been made, as it has here (the state government having been in operation for more than three years), then that which aided in bringing it about has performed its function. There is no basis for assuming that such a transitional measure—specifically, the provision for a seat of government—should then have any enduring or permanent quality which would make it an integral part of the fundamental structure of government established by the people of this state. Section 20, it is true, is found in the written document entitled "The Constitution of the State of Alaska." But the constitution, in its real sense, is more than that. It is a declaration of principles of fundamental law upon which our government is founded, embodied in the written document. The constitution is not merely the written instrument itself since the latter may contain, in addition to the organic law, other matters that do not go to make up the permanent foundation of government.

We conclude that section 20, by reason of its place in the constitutional document and its specific and limited purpose as declared in article XV, is not part of the organic law of this state. It has a status different from the other constitutional provisions, commencing with the declaration of rights in article I and concluding with requirements for amendment and revision in article XIII. Therefore, it is not governed by article XIII, and is subject to being changed by law.

Appellees contend that the minutes of the constitutional convention overwhelmingly support their view that section 20 may not be changed except by constitutional amendment. We find that the minutes have the opposite effect.

Section 20 of article XV was originally introduced in the convention by the Committee on Ordinances and Transitional Measures as Committee Proposal No. 17/a.[10] Its enacting clause was "RESOLVED, that the following be agreed upon as part of the Alaska State Constitution." When this proposal was being considered on the floor of the convention, along with other sections included in the schedule of transitional measures, the point was raised as to whether that enacting clause was correct. After some discussion, the convention apparently decided it was not; for by unanimous consent the enacting clause was changed to read: "Resolved, that the following be agreed upon *as part of*

7. Act of August 24, 1912, 37 Stat. 512, 48 U.S.C.A. § 21 et seq.

8. Alaska Const., art. XV, § 4.

9. Webster's New International Dictionary 2691 (2d ed. 1960).

10. Alaska Constitutional Convention Minutes, Jan. 24, 1956, at 82–83.

*the schedule appended to the Alaska State Constitution.*" [11] (Emphasis added.)

This change is significant. It shows the understanding of the convention that transitional measures, in being adopted as "part of the schedule appended to" the constitution, rather than "as part of" the constitution, were considered to have a separate status from the other articles. This hardly supports appellees' view that section 20 has the same abiding and enduring quality as other provisions of the constitution which are clearly subject to article XIII as to amendment and revision.

■ The question of whether the provision as to the location of the capital could be changed by law or only by constitutional amendment was the subject of considerable debate and the expression of divergent views when considered on the floor of the convention. This court has previously held that opinions of individual members of the convention generally are not considered to be a safe guide in ascertaining the purpose of a majority of the convention when adopting a particular provision.[12] But reports of committees and statements of chairmen of such committees stand on a more solid footing, and may be resorted to in determining the intent of the enacting body.[13]

In the convention proceedings we find something of value, as far as intent is concerned, in statements made by the chairman of the Committee on Ordinances and Transitional Measures. Floor debate showed the existence of a faction definitely opposed to having the capital location a permanent part of the constitution and subject to change only by constitutional amendment. The chairman of this committee, which was re-

sponsible for the Schedule of Transitional Measures and, specifically, the language of section 20 that "The capital of the State of Alaska shall be at Juneau", was asked directly whether that language meant that the capital could be changed, or that it could never be changed, or how it could be changed. His unequivocal reply is meaningful:

> "Mr. Fischer, the question is a good one and in all fairness should be brought before the Convention in regard to its legal implications. The schedule or ordinances are simply transitional measures and the definitions of them by the courts are that they only serve the purpose of putting a constitution in operation of a change from Territorial government to a state government and once that has been accomplished to the fullest extent, then any of the ordinances underneath this schedule are no longer to be considered as laws. If you want to put it frankly and openly here, it would leave it in this respect: after the state became a government, under the ordinance here it would be possible to change the capital by method of the legislature or it would even be open to the initiative and referendum. The Committee considered a number of proposals there, and considered them very thoroughly, and this was certainly a committee compromise." [14]

This was not the only time that the chairman spoke on that subject. On other occasions during debate on the measure, he made statements which fortified the conclusion that section 20 would be subject to change by law. For example, in speaking

11. Id., Feb. 1, 1956, at 12–16, 33–34.

12. Matthews v. Quinton, Opinion No. 31, 362 P.2d 932, 944 (Alaska 1961), cert. denied, 368 U.S. 517, 82 S.Ct. 530, 7 L. Ed.2d 522 (1962).

13. In Knudsen v. City of Anchorage, Opinion No. 21, 358 P.2d 375, 377–378 (Alaska 1960) we considered the remarks of a committee chairman in determining the meaning of article I, section 11 of the

constitution. As to the use of committee reports in ascertaining legislative intent see Duplex Printing Press Co. v. Deering, 254 U.S. 443, 474–475, 41 S.Ct. 172, 65 L.Ed. 349, 360 (1921); 1 Willoughby Constitutional Law of the United States § 35, at 57–60 (2d ed. 1929).

14. Alaska Constitutional Convention Minutes, Jan. 24, 1956, at 86–87.

of an alternate proposal the committee had considered, whereby the capital would have initially been located at Juneau and then subject to change by referendum by the people in ten years,[15] the chairman spoke of the lack of any measure of security for Juneau property owners, regardless of the choice of the convention between that proposal and what is now section 20 of article XV. Among other things he said: "The only guarantee of security is if this were *in the body of the constitution,* which of course then could still be reached by constitutional amendment."[16] (emphasis added) On another occasion, he was asked by a delegate what effect the preamble to article XV would have on section 20. The chairman gave his opinion that where such a preamble was used, the only purpose was to direct an orderly transfer from a territorial to a state form of government, and when the state government came into effect, "the entire schedule that will be offered by the Ordinances Committee will drop away from the constitution and no longer be a part of it." And then when asked whether the initiative provisions would apply as well as the authority of the legislature to amend the location of the capital, the chairman replied "That is correct."[17]

This expression of opinion by the committee chairman may not be proof in itself that the majority of the convention intended section 20 to be subject to change by law. But it fortifies that conclusion— one which we have reached independently of the convention proceedings. Furthermore, it certainly tends to disprove appellees' theory to the effect that section 20 was intended to be in the same status as other integral parts of the constitution, subject to change only by constitutional amendment.

If we were to adopt appellees' argument, we would be obliged to ignore the unmistakable meaning of the preamble to article XV, or else assume that those words do not mean what they say. We would also be obliged to assume that the chairman of the committee that included section 20 in the schedule of transitional measures did not mean what he said, or else had made a gigantic mistake when, in speaking for his committee, he told the convention what the nature and status of such a transitional measure was, and in so doing, obviously induced at least the opponents of any permanent location of a capital to believe that section 20, as a transitional measure, would not be permanent but could be changed by law. We are not justified in making such unreasonable assumptions or in ignoring the plain language of the preamble, particularly in the total absence of any explanation for the convention's deliberate action in placing section 20 in a schedule of transitional measures, rather than in one of the first twelve articles where constitutional permanency would have been assured.

Our attention is directed to another aspect of the convention proceedings as tending to support appellees' theory of the case. When the section pertaining to the location of the state capital was being debated, a motion was made to add by amendment the words "unless decided otherwise by law." This was defeated.[18]

Appellees argue that the rejection by the convention of this qualifying language expressed the intent of the majority that the location of the capital at Juneau was not to be changed by law, but only by constitutional amendment. This attempt to amend section 20 does not have the effect urged by appellees. The meaning they assign to it is negatived by the assurances given by

15. This proposal was introduced by the Committee on Recommendations and Resolutions, and then later referred to the Committee on Ordinances and Transitional Measures. Alaska Constitutional Convention Journal, Dec. 14 and 17, 1955.

16. Alaska Constitutional Convention Minutes, Jan. 24, 1956, at 88.

17. Id., Jan. 26, 1956, at 37–38.

18. Id., Jan. 24, 1956, at 100–101.

the chairman of the Committee on Ordinances and Transitional Measures (which we have already noted) that this section of article XV, as it then read and as it now reads, was subject to change by law because it was of a transitional nature. In fact, in speaking directly to the proposed amendment, the chairman said:

"Mr. President, of course this is just my own opinion on the location of the capital; I would prefer myself that it be in the body of the constitution and that is it, but in order to allay the thoughts of any of the members that might be in disagreement with the Committee on this, I know the Committee is right and knowing that the Committee is right, certainly no harm can be done by adding the words which are suggested in this amendment because it will mean exactly the same then as is does now in this particular place where it is located in the ordinances. So I think I speak for at least the majority of the Committee that we certainly would have no objections to those words being added." [19]

Appellees then point to other sections of the schedule in article XV, where changes by law were expressly contemplated, as indicating an intent that the sections which did not contain such permissive language were to be subject to change only by constitutional amendment. An example is section 1 which provides that "All laws in force in the Territory of Alaska on the effective date of this constitution and consistent therewith shall continue in force until they expire by their own limitation, are amended, or repealed."

We do not know why this section was written as it was. Perhaps the words "until they expire by their own limitation, are amended, or repealed" are superfluous, and section 1 would have exactly the same status and meaning if it simply read that "All laws in force in the Territory of Alaska on the effective date of this consti-

tution and consistent therewith shall continue in force." This is a question we need not decide, because it is not before us. But we cannot reach the ready conclusion, as appellees do, that because this section and others in the schedule of transitional measures do have express provisions for change by law, and section 20 does not, that the latter cannot be changed except by constitutional amendment. Appellees' suggested interpretation does not explain away what we have pointed out earlier in this opinion: the distinct and limited purpose of section 20 as stated in the preamble to article XV, and the meaning and effect given the section by the committee which studied and introduced it in the convention. Those factors exist, and they are persuasive; and the conclusion we have reached from considering them is not less creditable because of appellees' argument regarding the language of other sections of article XV.

Appellees seem to rely heavily on what they consider to be the "understanding" of the citizens of Alaska who ratified the constitution. They contend that the voters were under the impression that the provision categorically stating that "The capital of the State of Alaska shall be at Juneau" was as much an integral part of the constitution as any other part, and was not subject to change at any time by popular vote.

We cannot determine the understanding of each citizen who voted to ratify the constitution. This would be purely a matter of conjecture. If the record of convention debate on section 20 is any guide, one might reasonably conclude that some voters understood that section as making the capital an integral part of the organic law, subject to change only by constitutional amendment, and that others understood it as being less permanent in nature and subject to change by law.

Appellees attempt to justify their opinion as to what impression the voters were under, by stating that there is nothing in

19. Id., Jan. 26, 1956, at 31.

the language of the constitution to indicate to those ratifying it that the provisions of article XV were not of the same status as other sections in the constitution. This is not so. We have already pointed out that, at least so far as section 20 is concerned, the clear and unambiguous wording of the preamble to article XV gives that section a character and quality and status entirely different from those provisions of other articles of the constitution which constitute this state's fundamental, organic law.

■ It is our determination that section 20 of article XV, because of its place in the constitution, the history of its adoption, and its express purpose as stated in the preamble to the article of which it is a part, was a provision not intended to be a permanent and abiding part of the fundamental law of this state which could be changed only by constitutional amendment. It is subject to change by law, enacted either by the legislature or by the people through the initiative.

■ The Secretary of State had planned to place this initiative proposition on the ballot for the primary election held on August 14, 1962—this being "the first statewide election held more than one hundred twenty days after adjournment of the legislative session following the filing" of the petition.[20] But the lower court's injunction prevented him from doing that. Because of this circumstance—that is, that the "first" statewide election is no longer available for placing the proposition on the ballot, appellees contend that this appeal should be dismissed as moot.

Appellees read into article 11, section 4, a restriction that is not there: that the secretary of state may place a proposition on the ballot *only* at the first statewide election held more than one hundred twenty days after adjournment of the legislative session following the filing of the petition. If he is prevented from doing that, then appellees' position is that the people should not be permitted to vote on the proposition at a later election, unless the sponsors of the initiative repeat their efforts by filing a new application, circulating a petition for the required number of signatures, and otherwise complying with prerequisites to having the proposition submitted to the voters.

We find it more reasonable—more consonant with the right given the people to enact laws by initiative—to not read the section so restrictively. Our view is supported by its constitutional history. As originally introduced section 4 provided that laws proposed by the initiative shall be submitted to the voters "at an election not later than 180 days after the adjournment of the legislative session following the filing of the petition."[21] This proposal was amended before adoption to read as it does now.[22] The purpose of the amendment, as explained by one of its sponsors, was to do away with the high costs of special elections for such matters (estimated at $40,000), by requiring that the initiative proposition go on the ballot at a statewide election, whether it be a primary or a general election or a special election called for some other purpose.[23] No other reason for the change was suggested. We believe it

20. Alaska Const., art. XI, § 4 provides: "An initiative petition may be filed at any time. The secretary of state shall prepare a ballot title and proposition summarizing the proposed law, and shall place them on the ballot for the first statewide election held more than one hundred twenty days after adjournment of the legislative session following the filing. If, before the election, substantially the same measure has been enacted, the petition is void."

21. Alaska Constitutional Convention, Committee on Direct Legislation, Committee Proposal No. 3, Dec. 9, 1955.

22. Alaska Constitutional Convention Minutes, Dec. 19, 1955, at 58–60. The amendment was adopted on a voice vote, without debate.

23. Ibid.

was not designed with th objective of depriving the people of the right to vote if by reason of circumstances such as exist here it became impossible to submit the proposition at the "first" statewide election held within the prescribed time. If we were to defer to appellees' interpretation of the section, we would be permitting them to take advantage of an erroneous judgment given by the court below at their instigation. This would hardly be just. We hold this appeal is not moot, and that the initiative proposition in issue in this case may be placed on the ballot for the first available statewide election held more than one hundred twenty days after adjournment of the legislative session following its filing.

The judgment of the superior court is reversed, the injunction is dissolved, and the case is remanded with directions to enter a declaratory judgment to the effect that article XV, section 20 of the Constitution of the State of Alaska may be amended by law enacted by the people through the initiative.

AREND, Justice (dissenting in part).

I cannot agree with the conclusion reached in this case by the majority that section 20 of article XV of the Alaska constitution is subject to change by law, enacted either by the legislature or by the people through the initiative.

In support of their decision, my colleagues reason that section 20 is not a permanent part of the constitution changeable only by constitutional amendment, because the section is included under an article entitled "Schedule of Transitional Measures" and has a preamble which reads: "To provide an orderly transition from a territorial to a state form of government, it is declared and ordained."

1. In the same vein, the last sentence of section 1 of article VI, which is far removed in the constitution from the "Schedule of Transitional Measures," is nevertheless a transitional provision for it reads:

That title and preamble lose their force as criteria for determining whether section 20 is to be treated as a temporary measure when we consider them in the light of the following facts: (1) Section 20 appears in the body of the constitution itself and not as an appendage thereto; (2) it is contained in an "Article" of the constitution; and (3) it is not limited by such "transitional" phrases found in other sections of article XV as "until they expire by their own limitation, are amended, or repealed," "until they [officers of the Territory] are superseded by officers of the State," "pending enactment of legislation" and "unless otherwise provided by law."

I do not mean to infer by what I have just said that because a section in article XV does not contain a transitional phrase within the section itself it is not a transitional measure. Quite to the contrary, for their are a number of sections in article XV which need no such phrase since they are transitional by their very nature,[1] e. g., section 9 which provides:

"The first governor and secretary of state shall hold office for a term beginning with the day on which they assume office and ending at noon on the first Monday in December of the even-numbered year following the next presidential election. This term shall count as a full term for purposes of determining eligibility for reelection only if it is four years or more in duration."

The same cannot be said of section 20, however, for it states simply and clearly: "The capital of the State of Alaska shall be at Juneau." It does not say that the capital shall be at Juneau for one day or one year or ten years, or until the legislature shall change it by law or the people by the initiative. I am of the opinion that such a plain pronouncement as section 20 can be

"Until reapportionment, election districts and the number of representatives to be elected from each district shall be as set forth in Section 1 of Article XIV."

regarded only as an integral part of our constitution and can be changed only in the manner provided in the constitution for the amendment of any other integral part of that document.[2]

To further sustain their view that section 20 is a transitional measure which can be changed by initiative of the people, the majority members of this court call attention to certain things that transpired at the constitutional convention when the section in question was being considered. They attach considerable significance to the opinion of the chairman of the Committee on Ordinances and Transitional Measures,[3] expressed on the floor of the convention, that section 20 was only a transitional measure subject to change by the legislature or the initiative.

The majority opinion concedes that the sentiments expressed by the committee chairman may not be proof in themselves that the majority of the convention intended section 20 to be subject to change by law. The opinion also concedes that from the debate on section 20 at the convention "one might reasonably conclude that some voters understood that section as making the capital an integral part of the organic law, subject to change only by constitutional amendment, and that others understood it as being less permanent in nature and subject to change by law." If all this be so, how then can the majority of this court in the same breath say that the distinct and limited purpose of section 20 as stated in the preamble to article XV, and the meaning and effect attached to it by the committee which studied and introduced it in the convention "gives that section a character and quality and status entirely different from those provisions of other articles of the constitution which constitute this state's fundamental, organic law"?

I am not persuaded in the least by the opinion and statements of the committee chairman, relied upon by the majority, because that same chairman also stated on the floor of the convention that he had no objection to a proposed amendment of section 20 which would have added thereto the words "unless decided otherwise by law." He even went on to say:

"So I think I speak for at least the majority of the Committee that we certainly would have no objections to those words being added."[4]

Yet the minutes reveal that on each of the two occasions when the proposed amendment came up for a vote, the chairman and a substantial majority of the delegates voted it down. And thus there were kept out of section 20 the very words that would have made it a transitional measure.[5]

Under the decision reached by the majority this day, the duration of the location of the state capital in any particular place becomes most uncertain. It may now be decided by the initiative that the capital shall be removed from Juneau to a place somewhere in western Alaska; but before the removal can actually be accomplished under the proposed bill, another measure may be initiated by the people at any time,[6] designating a still different location.

I think that this court should have held that section 20 of article XV is an integral part of the fundamental law of this state which can be changed only by constitutional amendment and then have gone on to rule that the lower court had jurisdiction to enjoin the Secretary of State from placing the proposition on the ballot for submission to the voters of Alaska.

---

2. The methods by which the Alaska constitution may be amended are summarized in note 2 of the majority opinion.

3. As pointed out in the majority opinion, the Committee on Ordinances and Transitional Measures originally introduced section 20 of article XV in the convention as Committee Proposal No. 17/a.

4. Alaska Constitutional Convention Minutes, Jan. 26, 1956, at 31.

5. Id., at 40; Jan. 24, 1956, at 101.

6. See note 20 of the majority opinion.