Scott KOHLHAAS, Appellant,

v.

STATE of Alaska, OFFICE OF the
LIEUTENANT GOVERNOR,
Appellee.

No. S–13024.

Supreme Court of Alaska.

Jan. 15, 2010.

Rehearing Denied Feb. 19, 2010.

See also, 147 P.3d 714.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant.

Sarah J. Felix, Assistant Attorney General, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, and WINFREE, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

In 2003 Scott Kohlhaas proposed a ballot initiative calling for a statewide vote on whether Alaska should secede from the United States. The lieutenant governor refused to certify Kohlhaas's initiative, and the superior court concluded that his refusal was proper. Affirming the judgment of the superior court, we held that the lieutenant governor had correctly declined to certify Kohlhaas's initiative because secession is a clearly unconstitutional end.

In 2007 Kohlhaas drafted a second initiative on this topic, this time calling for a statewide vote on whether the State should seek changes in existing law and constitutional provisions that would authorize Alaska's secession from the United States. The lieutenant governor again declined to certify the initiative for circulation, and the superior court again concluded that the lieutenant governor's denial of certification was proper, granting the State's motion for summary judgment. Kohlhaas appeals.

Kohlhaas's revised initiative seeks either secession itself or a change in existing constitutional law to allow secession. Because secession is clearly unconstitutional, and because the people of Alaska may not effect constitutional change through the initiative process, Kohlhaas's revised initiative is an improper subject for the initiative process.

The lieutenant governor correctly denied certification of the initiative. We thus affirm the superior court's judgment.

## II. FACTS AND PROCEEDINGS

### A. Initiative 03INDP and *Kohlhaas I*

In April 2003 Scott Kohlhaas submitted an initiative to the Office of the Lieutenant Governor, accompanied by at least one hundred qualifying signatures as required by Alaska law.[1] The initiative, known as 03INDP, read as follows:

INITIATIVE PETITION:

AN INITIATIVE REQUIRING THE STATE OF ALASKA TO VOTE ON OBTAINING ALASKAN INDEPENDENCE, IF LEGALLY POSSIBLE, OR TO SEEK CHANGES IN EXISTING LAW AND CONSTITUTIONAL PROVISIONS TO AUTHORIZE, AND THEN OBTAIN, INDEPENDENCE.

Be it enacted by the people of the State of Alaska:

(1) At the next regular general election, the following question shall be presented to the voters of the State of Alaska for approval or rejection:

"Shall the State of Alaska obtain independence from the United States of America, and become an independent nation, if such independence is legally possible, and if such independence is not legally possible under present law, shall the State of Alaska seek changes in existing law and Constitutional provisions to authorize such independence, and then obtain independence?"

(2) If this question is not answered affirmatively, then this question shall be placed before the voters of Alaska every ten years in the future.

(3) The provisions of this Act are independent and severable, and if any provision of this Act, or the applicability of any provision to any person or circumstance, shall be held to be invalid by a court of competent jurisdiction, the remainder of this Act

---

1. *Kohlhaas v. State, Office of Lieutenant Governor* (*Kohlhaas I*), 147 P.3d 714, 715–16 (Alaska 2006). Unless otherwise noted, this subsection draws directly from the statement of facts in *Kohlhaas I*.

shall not be affected and shall be given effect to the fullest extent practicable.

The attorney general's office reviewed the petition application for compliance with the statutes that govern Alaska's initiative process, AS 15.45.030 [2] and AS 15.45.040.[3] It advised then-Lieutenant Governor Loren Leman that the initiative did not comply with the constitutional and statutory provisions governing the use of Alaska's initiative process. In its recommendation to the lieutenant governor, the attorney general's office advised that Initiative 03INDP failed because "[t]he initiative may not be used to propose amendments to the Alaska State Constitution" and "the law is clear that a state may not secede from the union." Based on this recommendation, the lieutenant governor declined to certify the initiative petition for circulation.[4]

Kohlhaas appealed to the superior court, arguing that the lieutenant governor was required to certify the initiative for circulation because initiatives that are not clearly unconstitutional may be judicially reviewed only after enactment. Superior Court Judge Sen K. Tan ruled in favor of the State on the ground that secession from the United States is clearly illegal, and Kohlhaas appealed that decision.

2. AS 15.45.030 provides:
   The application must include the
   (1) proposed bill;
   (2) printed name, the signature, the address, and a numerical identifier of not fewer than 100 qualified voters who will serve as sponsors; each signature page must include a statement that the sponsors are qualified voters who signed the application with the proposed bill attached; and
   (3) designation of an initiative committee consisting of three of the sponsors who subscribed to the application and represent all sponsors and subscribers in matters relating to the initiative; the designation must include the name, mailing address, and signature of each committee member.

3. AS 15.45.040 provides:
   The proposed bill shall be in the following form:
   (1) the bill shall be confined to one subject;
   (2) the subject of the bill shall be expressed in the title;
   (3) the enacting clause of the bill shall be: "Be it enacted by the People of the State of Alaska;"

In *Kohlhaas I*, we held that (1) the State may refuse to certify an initiative proposing ends that are clearly unconstitutional; (2) secession from the United States is clearly unconstitutional and therefore an improper subject for the initiative, and thus the State properly rejected the petition proposing the initiative; and (3) because the initiative had not been circulated, possible severance of its unconstitutional portions would not be considered.[5]

**B. Initiative 07AKIN and the Current Case**

On January 29, 2007, Kohlhaas, Lynette Clark, and Linda Winkelman filed an application with the lieutenant governor's office for an initiative petition calling for Alaskans to vote on seeking changes in existing law and constitutional provisions to authorize secession from the United States. This initiative, known as 07AKIN, differed from the prior initiative in that it did not expressly propose outright secession but instead proposed that the State seek changes in law and constitutional provisions to authorize secession. Its text reads as follows:

AN INITIATIVE REQUIRING THE STATE OF ALASKA TO VOTE ON SEEKING CHANGES IN EXISTING

   (4) the bill may not include subjects restricted by AS 15.45.010.
   AS 15.45.010 provides:
   The law-making powers assigned to the legislature may be exercised by the people through the initiative. However, an initiative may not be proposed to dedicate revenue, to make or repeal appropriations, to create courts, to define the jurisdiction of courts or prescribe their rules, or to enact local or special legislation.

4. Former AS 15.45.070 provides: "The lieutenant governor shall review the [initiative] application and shall either certify it or notify the initiative committee of the grounds for denial." This statute was amended in 2006 to include a sixty-day deadline. Ch. 38, § 2, SLA 2006. AS 15.45.080 provides: "The lieutenant governor shall deny certification upon determining in writing that (1) the proposed bill to be initiated is not in the required form; (2) the application is not substantially in the required form; or (3) there is an insufficient number of qualified sponsors."

5. 147 P.3d at 717–20.

LAW AND CONSTITUTIONAL PROVISIONS TO AUTHORIZE ALASKAN INDEPENDENCE.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF ALASKA:

(1) At the next regular election, the following question shall be presented to the voters of the State of Alaska for approval or rejection:

Shall the State of Alaska seek changes in existing law and Constitutional provisions to authorize it to obtain independence from the United States of America?

(2) If this question is not answered affirmatively when this question is presented to the voters, then this question shall be placed before the voters of Alaska every ten years thereafter.

(3) The provisions of this Act are independent and severable, and if any provision of this Act, or the applicability of any provision to any person or circumstance, shall be held to be invalid by a court of competent jurisdiction, the remainder of this Act shall not be affected and shall be given effect to the fullest extent practicable.

After receiving the application, then-Lieutenant Governor Sean Parnell forwarded the initiative petition to then-Attorney General Talis Colberg and requested review of the petition application "to determine whether it complies with AS 15.45.030 and AS 15.45.040."

In late February 2007 the attorney general's office provided a memorandum of advice to the lieutenant governor recommending that he deny certification of the petition because it did "not comply with the constitutional and statutory provisions governing the use of the initiative" process. The memorandum concluded that "[t]he proposed bill still calls for Alaska's secession from the United States, which is clearly unconstitutional, and therefore a prohibited subject" for an initiative, and recommended that the lieutenant governor decline to certify the application.

On March 7, 2007, the lieutenant governor notified Kohlhaas that he was denying certification of the initiative petition.

Later that month, Kohlhaas filed a complaint seeking judicial review of the lieutenant governor's refusal to certify his initiative petition for circulation. In mid-April the State filed its answer and requested that Kohlhaas's complaint be dismissed with prejudice. In early September 2007 Kohlhaas filed a motion for summary judgment. Less than a month later, the State opposed Kohlhaas's motion and filed its own cross-motion for summary judgment.

On January 4, 2008, Superior Court Judge Jack W. Smith granted the State's motion for summary judgment and found that Kohlhaas's "initiative application propose[d] a measure seeking secession for Alaska from the union ..., an objective that is clearly unconstitutional under controlling legal authority." Citing *Kohlhaas I*, the superior court concluded that "[w]here an initiative application proposes a clearly unconstitutional measure, or proposes a constitutional amendment, the [l]ieutenant [g]overnor is empowered to conduct a pre-election review and deny certification of the initiative application." Kohlhaas appeals.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[6] "When the superior court acts as an intermediate court of appeals, we independently review the decision of the administrative agency" or actor.[7] To issues of statutory and constitutional interpretation we "apply our independent judgment, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[8] As we explained in *Kohlhaas I*, "although we liberally construe constitutional and statutory provisions that apply to the initiative process, we also have a duty to consider carefully the initiative's subject mat-

---

6. *Alaska Action Ctr., Inc. v. Municipality of Anchorage*, 84 P.3d 989, 991 (Alaska 2004).

7. *Kohlhaas I*, 147 P.3d at 717 (citing *Circle De Lumber Co. v. Humphrey*, 130 P.3d 941, 946 (Alaska 2006)).

8. *Alaska Action Ctr.*, 84 P.3d at 991 (alteration and internal quotation marks omitted).

ter, given the constitutional limits on the people's right to direct legislation."[9]

## IV. DISCUSSION

Article XI, section 1 of the Alaska Constitution guarantees Alaskans the right to enact legislation by initiative: "The people may propose and enact laws by the initiative, and approve or reject acts of the legislature by the referendum." The right to enact legislation by initiative must be exercised in accordance with certain limitations, however, and where a proposed initiative exceeds those limitations, the State of Alaska may refuse certification.

In *Kohlhaas I*, we described two grounds on which the State may deny certification of an initiative, from which denial the sponsors of the initiative may obtain judicial review: "First, a petition may be rejected if it violates the subject matter restrictions that arise from the constitutional and statutory provisions governing initiatives.... Second, a petition may be rejected if it proposes a substantive ordinance where controlling authority establishes its unconstitutionality."[10]

In light of these alternative grounds for rejecting an initiative, we do not need to decide whether Kohlhaas's proposed initiative calls for actual secession or constitutional change to allow secession. If and to the extent the initiative calls for secession itself, it is clearly unconstitutional and therefore an improper subject for the initiative process. If and to the extent the initiative calls for changes in the Alaska Constitution to allow secession, it proposes constitutional change and is therefore an improper subject for the initiative process.

### A. The State May Refuse To Certify an Initiative Proposing Action that Is Clearly Unconstitutional.

In *Kodiak Island Borough v. Mahoney*, we gave as an example of a clearly unconstitutional initiative that would properly be rejected (even if correctly submitted as a procedural matter) an initiative proposing an ordinance that would mandate local school segregation based on race.[11] As we explained, a clerk's power to reject a clearly unconstitutional initiative proposal is analogous to the "authority [of executive agencies] to abrogate a statute which is clearly unconstitutional under a United States Supreme Court decision dealing with a similar law."[12] If a proposed initiative seeks a clearly unconstitutional end, the State may deny certification.[13]

Kohlhaas's first initiative called for a statewide vote on whether Alaska should secede from the United States. Kohlhaas claimed his initiative was not clearly unconstitutional because "neither the Alaska Constitution nor the United States Constitution contains provisions expressly prohibiting secession."[14] We rejected this argument.[15] Citing long-established federal constitutional law prohibiting secession, we held that the initiative was improper because it proposed the clearly unconstitutional end of secession.[16]

The constitutionality of secession was "intensely debated and ... unresolved" until the end of the Civil War.[17] As President Abraham Lincoln stated in his first inaugural address, "A disruption of the Federal Union heretofore only menaced, is now formidably attempted."[18] President Lincoln tried to persuade the country to reject threats of

9. 147 P.3d at 717 (citing *Brooks v. Wright*, 971 P.2d 1025, 1027 (Alaska 1999)).

10. *Id.* (internal quotation marks omitted).

11. 71 P.3d 896, 900 n. 22 (Alaska 2003) (citing *Brown v. Bd. of Educ. of Topeka, Kansas*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), for the proposition that racial segregation in public schools is unconstitutional).

12. *Id.* at 900 (internal quotation mark omitted).

13. *Kohlhaas I*, 147 P.3d at 717.

14. *Id.* at 718.

15. *Id.*

16. *Id.* at 718–20.

17. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 6 n. 1, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004).

18. Abraham Lincoln, First Inaugural Address (Mar. 4, 1861), *in* ABRAHAM LINCOLN: SPEECHES AND WRITINGS 1859–1865, at 215, 217 (Don E. Fehrenbacher ed., 1989).

secession from southern states, arguing that "no State, upon its own mere motion, can lawfully get out of the Union,—that *resolves* and *ordinances* to that effect are legally void,"[19] and that "the Union of these States is perpetual."[20] While a state's ability to secede was an unsettled question before the end of the Civil War, subsequent United States Supreme Court opinions have concluded that secession is clearly unconstitutional, and Lincoln's belief in a perpetual Union is reflected in what we have described as "a plenitude of Supreme Court cases holding as completely null" the acts of secession by Confederate states.[21] In *Texas v. White*, an opinion issued just after the Civil War, the United States Supreme Court stated:

> The Constitution, in all its provisions, looks to an indestructible Union, composed of indestructible States. When, therefore, Texas became one of the United States, she entered into an indissoluble relation. All the obligations of perpetual union, and all the guaranties of republican government in the Union, attached at once to the State. The act which consummated her admission into the Union was something more than a compact; it was the incorporation of a new member into the political body. And it was final. The union between Texas and other States was as complete, as perpetual, and as indissoluble as the union between the original States. There was no place for reconsideration, or revocation, except through revolution, or through consent of the States.[22]

This is the law to which we Alaskans bound ourselves at the moment we achieved statehood. We recognized in *Kohlhaas I*: "When the forty-nine-star flag was first raised at Juneau, we Alaskans committed ourselves to that indestructible Union, for good or ill, in perpetuity."[23] We concluded that because "[s]ecession is clearly unconstitutional"[24] and "[b]ecause the initiative [sought] a clearly unconstitutional end, the lieutenant governor correctly declined to certify it."[25]

■ Kohlhaas's revised initiative calls for a popular vote on whether the State should seek changes in state and federal law and the state and federal constitutions to allow secession. Kohlhaas concedes that, under *Kohlhaas I*, secession "is clearly unconstitutional, and therefore an improper subject for an initiative" but argues that secession "is not the subject of this proposed initiative." Instead, Kohlhaas argues, his revised initiative "mandates [the] perfectly legal act" of changing "existing law and [c]onstitutional provisions" to authorize secession. Kohlhaas asserts that his revised initiative is not clearly unconstitutional because "[t]he seeking of changes in existing law" is not unconstitutional.

The State maintains that Kohlhaas's new initiative nonetheless continues to propose an unconstitutional end: "The differences in the text of the two initiative measures do not change the central core of both measures— secession." The State's position mirrors the advice that was given to the lieutenant governor by the attorney general's office, which counseled that despite language changes in the revised initiative, "these changes are not

19. *Id.* at 218 (emphasis in original).

20. *Id.* at 217.

21. *Kohlhaas I*, 147 P.3d at 719. We recognized in *Kohlhaas I* that "[u]nsurprisingly, the Supreme Court has had little occasion since Reconstruction to address the legality of secession." *Id.* Thus, in *Kohlhaas I*, 147 P.3d at 719 n. 25, we cited decisions of the United States Supreme Court in *White v. Cannon*, 73 U.S. (6 Wall.) 443, 450, 18 L.Ed. 923 (1867), which held that the Louisiana ordinance of secession "was an absolute nullity"; *White v. Hart*, 80 U.S. (13 Wall.) 646, 651, 20 L.Ed. 685 (1871), which ruled that "[a]t no time were the rebellious States," including Georgia, "out of the pale of the Union"; *Taylor v. Thomas*, 89 U.S. (22 Wall.) 479, 491, 22 L.Ed. 789 (1874), which invalidated the issuance of treasury notes following Mississippi's ordinance of secession; and *Daniels v. Tearney*, 102 U.S. 415, 418, 26 L.Ed. 187 (1880), which declined to discuss the invalidity of a secession ordinance because the issue "has been settled by the arbitrament of arms and the repeated adjudications of this court."

22. 74 U.S. (7 Wall.) 700, 725–26, 19 L.Ed. 227 (1868).

23. 147 P.3d at 720.

24. *Id.*

25. *Id.* at 715.

sufficient to remedy the deficiency in the bill that we identified in our review of the earlier, similar initiative application. The proposed bill still calls for Alaska's secession from the United States, which is clearly unconstitutional, and therefore a prohibited subject for the initiative." The State argues that Kohlhaas's "tactic of proposing an initiative measure for the people to vote to seek amendment of state statutes, the state constitution, and the federal constitution" could potentially "allow a popular vote to seek ... all sorts of clearly unconstitutional ordinances." But as we ruled in *Kohlhaas I*, Alaska's initiative process may not be used to accomplish a clearly unconstitutional end.[26]

We do not need to decide this question. It is sufficient for this portion of the discussion to say that if and to the extent Kohlhaas's revised initiative seeks secession itself, it is clearly unconstitutional and therefore an improper subject for the initiative process.[27]

### B. The State May Refuse To Certify an Initiative that Proposes Constitutional Change.

█ We turn now to whether, even if it does not call for clearly unconstitutional action, the revised initiative proffered by Kohlhaas proposes constitutional change. We conclude that it does.[28]

26. *Id.* at 717–18.

27. *Id.* at 715.

28. Within the context of this appeal, we do not have to reach the question whether any constitutional change proposed by the revised initiative would constitute constitutional amendment or revision. In *Bess v. Ulmer*, we held that the Alaska Constitution distinguishes between two distinct kinds of constitutional change: amendment and revision. 985 P.2d 979, 982–83 (Alaska 1999) ("The Framers of Alaska's Constitution explicitly contemplated the importance of the differentiation between amendments and revisions and between their respective fields of application."). Because we hold that Kohlhaas's revised initiative is improper as a ballot measure, we do not have to reach the issue whether legal change to allow secession would rise to the level of a constitutional revision requiring a constitutional convention.

29. Alaska Const. art. XIII, §§ 1, 4; *Starr v. Hagglund*, 374 P.2d 316, 317 n. 2 (Alaska 1962).

█ As provided in Article XIII, the Alaska Constitution may be changed only two ways: (1) by constitutional convention, subject to ratification by the people; and (2) by a specific proposal that receives two-thirds vote by each house of the legislature, followed by a majority vote at the next general election.[29] The people of Alaska may not use the initiative process to propose constitutional amendments.[30] As we held in *State v. Lewis*, "The Alaska Constitution may not be amended by popular vote alone, without prior action by either the legislature or a constitutional convention."[31] Thus, if a proposed initiative seeks constitutional change, it violates the subject matter restrictions on Alaskans' right of initiative, and the lieutenant governor may deny certification.[32]

Kohlhaas argues in favor of the revised initiative that traditional avenues for legal, including constitutional, change may be used to render even secession legal. In reference to *Texas v. White*,[33] Kohlhaas specifically suggests that reconsidering or revoking one's statehood could be achieved lawfully through "[t]he consent of the States." But even if Kohlhaas is correct in arguing that our state constitution could be changed to allow secession, the initiative process is not an available forum through which to pursue such change.[34]

30. *Alaskans for Legislative Reform v. State*, 887 P.2d 960, 962 n. 1 (Alaska 1994), *overruled on other grounds by Kodiak Island Borough v. Mahoney*, 71 P.3d 896 (Alaska 2003); *State v. Lewis*, 559 P.2d 630, 639 (Alaska 1977); *Starr*, 374 P.2d at 317 n. 2.

31. 559 P.2d at 639.

32. *See* AS 15.45.080 ("The lieutenant governor shall deny certification upon determining in writing that (1) the proposed bill to be initiated is not in the required form. . . .").

33. 74 U.S. (7 Wall.) 700, 19 L.Ed. 227 (1868).

34. In *Kohlhaas I*, after holding Kohlhaas's first initiative clearly unconstitutional under federal law, we did not need to resolve the question whether the initiative improperly proposed amending the Alaska Constitution.

Kohlhaas's revised initiative explicitly directs state officials to "seek changes in existing ... [c]onstitutional provisions" that currently prohibit secession from the United States of America. Thus, the initiative itself recognizes that legalizing secession would require changing the Alaska Constitution. Moreover, even if the initiative did not include explicit reference to constitutional provisions and instead directed state officials only to "seek change in existing law" to permit secession, the initiative would still anticipate constitutional change. There is simply no way to accomplish the goal of Kohlhaas's revised initiative—to render secession constitutional—without changing the Alaska Constitution.[35]

Our written constitution was drafted not only as a framework for Alaska's government but also as "a compelling new argument for statehood itself"[36] that would convince both the people of Alaska and members of the United States Congress that Alaska was ready to manage its own affairs.[37] As its Framers knew, the Alaska Constitution would become operative only if and when Alaska became one of the United States. Because the Alaska Constitution is rooted in the relationship between the State of Alaska and the United States of America, neither the political framework it establishes nor the political community it names exists outside of that relationship.

Activated by the formal proclamation of statehood on January 3, 1959, the Alaska Constitution created a state government that is inextricably tied to the United States government. A dozen articles and more than two dozen sections of the Alaska Constitution refer to the federal government or constitution of the United States, including the provision that bases voter qualification on United States citizenship;[38] the requirement that officials in the three branches of government, including legislators,[39] judges,[40] and members of the executive branch,[41] be United States citizens; provisions relating to state legislative apportionment as based on the official reporting of the United States Census;[42] provisions relating to natural resources;[43] the provision disqualifying from public office anyone who advocates, or belongs to an organization that advocates, violent overthrow of the United States government;[44] and the requirement that all state officials take an oath to support and defend the United States Constitution.[45]

Moreover, Alaskans' political lives are inextricably tied to both the government of the State of Alaska and the government of the United States of America. Citizens of both, we share with all Alaska residents the rights and obligations of our state collective—and we share with all United States citizens the rights and obligations of our federal union. In fact, fulfilling "the inherent right of [Alaskans] to full citizenship as set forth in the

35. Because we decide this case on state constitutional grounds, we do not have to address the interplay between Kohlhaas's revised initiative and the United States Constitution.

36. Robert B. Atwood, Chairman, Alaska Statehood Committee, Opening Session Address to the Alaska Constitutional Convention (Nov. 8, 1955).

37. Ernest Gruening, Former Governor, Territory of Alaska, Opening Session Address to the Alaska Constitutional Convention (Nov. 9, 1955) (discussing the "restrictions, discriminations and exclusions" Alaska endured as a territory of the United States); VICTOR FISCHER, ALASKA'S CONSTITUTIONAL CONVENTION 3, 10, 25–28, 180–84 (1975).

38. Alaska Const. art. V, § 1.

39. *See* Alaska Const. art. II, § 2 (requiring all legislators to be qualified Alaska voters).

40. Alaska Const. art. IV, § 4 (qualifications for supreme court justices and superior court judges).

41. Alaska Const. art. III, § 25 (qualifications for heads of principal executive departments); Alaska Const. art. III, § 26 (qualifications for members of boards and commissions at head of principal departments, regulatory agencies, and quasi-judicial agencies); *see also* Alaska Const. art. III, §§ 2, 7 (requiring governor and lieutenant governor to be qualified Alaska voters).

42. Alaska Const. art. VI, §§ 1, 2, 3, 8(b), 10(a); *see also* Alaska Const. art. VI, § 11 (allowing enforcement by any qualified Alaska voter).

43. Alaska Const. art. VIII, §§ 6, 9, 11, 14.

44. Alaska Const. art. XII, § 4.

45. Alaska Const. art. XII, § 5.

Constitution of the United States" was a primary goal of statehood.[46] Altering Alaska's statehood status and relationship with the federal government would necessarily, and fundamentally, alter the character of each and every Alaskan's citizenship.

If the people of Alaska wish to effect lawful constitutional change, they must do so in the modes outlined by the Alaska Constitution itself. As we have long held, the initiative process is an inappropriate forum through which to pursue constitutional change. Even if Kohlhaas's revised initiative does not seek secession, it proposes constitutional change to permit secession and is therefore an improper subject for the initiative process.[47]

## V. CONCLUSION

Kohlhaas's revised initiative seeks either secession itself or a change in the Alaska Constitution to allow secession. We have held that secession from the Union is clearly unconstitutional. We have also held that the Alaska Constitution may not be amended by initiative. Therefore, the lieutenant governor correctly denied the initiative's certification and it was not error for the superior court to dismiss Kohlhaas's suit on summary judgment grounds. For these reasons, we AFFIRM the superior court's judgment.

MATTHEWS, Justice, and CARPENETI, Justice, not participating.

**46.** William Egan, President, Alaska Constitutional Convention, Closing Session Address to the Alaska Constitutional Convention (Feb. 5, 1956) ("We love our great United States of America, and our hearts belong too, to our great Territory of Alaska and we will never have a true peace of mind until we are taken in full membership as one of the great states of the Union."); *see also* Ernest Gruening, *supra* note 37 ("We Alaskans believe—passionately—that American citizenship is the most precious possession in the world. Hence we want it in full measure; full citizenship instead of half-citizenship; first class instead of second class citizenship. We demand equality with all other Americans, and the liberties, long denied us, that go with it.").

**47.** Both parties also raised and briefed the question whether Kohlhaas's revised initiative proposes a law or is merely an advisory measure. Because Kohlhaas's revised initiative implicates our larger prohibition on constitutional amendment by initiative, we do not have to decide this question.